UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| PROGRESSIVE HAWAII INSURANCE CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No.: 3:12-CV-574-TAV-HBG ) |
| GERALD GULLEY, Administrator Ad Litem for the Estate of XAVIER C. BINGHAM, RYAN WESTBROOK, JAMES A. RUSSELL, ANGELIC HODGE, ALLSTATE INSURANCE COMPANY, and GEICO INSURANCE COMPANY, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

Pending before the Court in this declaratory judgment action is the Motion for Summary Judgment [Doc. 37] filed by plaintiff Progressive Hawaii Insurance Corporation ("Progressive"). This case arises from a motor vehicle accident on May 12, 2012, involving a 2012 red Nissan Maxima leased to defendant Nakia Davis. Although Ms. Davis had an automobile insurance policy issued by Progressive for another vehicle, Progressive argues that the Nissan Maxima was not an "insured vehicle" under the policy and no one in the vehicle was a permissive driver under the policy. Accordingly, Progressive contends that it has no duty of defense or indemnity to Ms. Davis in regard to the accident.

Progressive's summary judgment motion is supported by a memorandum of law [Doc. 38] and a Statement of Undisputed Material Facts with the Affidavit of Suzanne

Hardy and other supporting documentation [Doc. 39]. Pursuant to the August 16, 2013 Order of Magistrate Judge Guyton [Doc. 51 at ¶ 2], Progressive was ordered to supplement the motion for summary judgment with its position regarding any legal effect the default judgment entered against Ms. Davis [Doc. 45] would have on the pending motion. Progressive filed its supplement on August 30, 2013 [Doc. 52], arguing that a default judgment against one defendant in a declaratory judgment action has no effect on the remaining defendants' ability to defend on the merits of the case. Also pursuant to Judge Guyton's August 16, 2013 Order [Doc. 51 at ¶ 5], the defendants were directed to respond to the motion for summary judgment and plaintiff's supplement by November 1, 2013. No response has been filed to the motion for summary judgment or Progressive's supplemental memorandum and the time for doing so has passed. E.D. Tenn. L.R. 7.2(a).

The Court has carefully reviewed the pending motion and related pleadings in light of the entire record. For the reasons set forth herein, the plaintiff's motion for summary judgment [Doc. 37] will be **GRANTED**.

I.  **Relevant Facts[1]**

As the Court is obliged to do in reviewing a motion for summary judgment, the facts of this case will be viewed in the light most favorable to the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[1] As set forth herein, the facts are primarily taken from the Statement of Undisputed Material Facts [Doc. 39] filed by Progressive in support of its motion for summary judgment. The facts are supported with citations to the Affidavit of Suzanne Hardy, and the Examinations Under Oath of Nakia Davis and Xavier Bingham [Docs. 39-1 – 39-3].

Defendant Nakia Davis is the owner and resident of a single family home at 3732 Lilac Avenue, in Knoxville, Tennessee, where she has lived for the past six years [Doc. 39 at ¶¶ 1-2]. Ms. Davis lives with her 15-year old daughter, Alexandria Davis, her two-year old grandson Jy'Zayiah Davis, and her friend Darryl Scott [*Id.* at ¶ 4]. Xavier Bingham, deceased, was Ms. Davis's son, but he did not live at the 3732 Lilac Avenue residence at any time [*Id.* at ¶ 5]. At the time of the accident and for at least two years prior, Xavier Bingham lived with his aunt, Maria Bingham, at 3042 Wilson Avenue, in Knoxville [*Id.* at ¶ 6].

At the time of the accident, Nakia Davis was the owner of a 1995 Chevrolet Astro van [*Id.* at ¶ 7]. Ms. Davis states that the van broke down and became inoperable in January or February 2012 [*Id.* at ¶ 9]. Thus, beginning in the spring of 2012 until the time of the accident, Ms. Davis occasionally rented vehicles from Budget Rental Cars on Clinton Highway when she needed a vehicle for personal use [*Id.* at ¶¶ 10-12]. It is undisputed that during the occasions that Ms. Davis rented vehicles prior to the accident, she never allowed anyone else to drive the rental vehicle, including her son, Xavier Bingham [*Id.* at ¶ 13]. Ms. Davis had told Mr. Bingham in the past that he did not have permission to drive her rental vehicles because he was not listed as an authorized driver on the rental agreements and he was too young [*Id.* at ¶ 14].

Several days prior to the accident, Ms. Davis rented a 2012 red Nissan Maxima in anticipation of a family trip to Florida [*Id.* at ¶ 16]. The rental agreement specified that Ms. Davis was the only authorized driver [*Id.* at ¶ 19]. Ms. Davis did not discuss this

3

particular rental vehicle with Mr. Bingham, but she had advised him on several prior occasions that he did not have permission to drive her rental vehicles [*Id*. at ¶ 20-21]. It is undisputed that Ms. Davis did not give Mr. Bingham permission to drive the 2012 Nissan Maxima on the day of the accident [*Id*. at ¶ 22].

In the afternoon of May 12, 2012, Ms. Davis attended a family gathering for her mother at the Turn Key Center in east Knoxville [*Id*. at ¶ 23]. Ms. Davis had driven the 2012 Nissan Maxima rental car to the gathering, but her sister had driven a black Chevrolet Impala to the event, a vehicle that Ms. Davis sometimes borrowed [*Id*. at ¶ 26]. During the event, Mr. Bingham approached Ms. Davis and asked for permission to use "the car" [*Id*. at ¶ 25]. Both Ms. Davis and Mr. Bingham believed they were referring to the Chevrolet Impala when they discussed "the car" [*Id*. at ¶ 28-29]. Ms. Davis gave her son permission to drive "the car" to the store with his friends, intending only to give him permission to drive the Chevrolet Impala and not the Nissan Maxima rental car [*Id*. at ¶ 27-28].

Outside the facility, another relative told Mr. Bingham that the new red Nissan Maxima parked outside was his mother's rental car [*Id*. at ¶ 30-32]. Mr. Bingham got into the Nissan Maxima and noticed that the key fob was lying in a cup holder [*Id*. at ¶ 32]. Because this vehicle has a keyless start button for the ignition, Mr. Bingham was able to start the car [*Id*. at ¶ 33-34]. Without further consultation with Ms. Davis, Mr. Bingham, defendant Ryan Westbrook, and Justin Walker, deceased, got in the Nissan Maxima and left [*Id*. at ¶ 35-36]. Mr. Bingham admitted that he did not have his

4

mother's permission to drive her rental cars and that if he had gone inside and asked her, she would not have given him permission to drive the Nissan Maxima [*Id*. at ¶ 37-38].

After driving around, playing video games, drinking alcohol, and picking up someone known only as "Deon," Mr. Bingham, Mr. Walker, and Mr. Westbrook intended to go to a nightclub called Rumors [*Id*. at ¶¶ 40-41, 43, 46]. Mr. Bingham announced that he was "buzzed," and asked, "Who wants to drive?" [*Id*. at ¶ 47]. Mr. Bingham claims that "Deon" volunteered to drive and that he was driving at the time of the accident [*Id.* at ¶ 48]. On the evening of May 12, 2012, the Nissan Maxima was involved in a collision on Castle Street with a vehicle occupied by defendants James Russell and Angelic Hodge [Doc. 17 at ¶ 13]. The collision resulted in bodily injuries to the occupants of both vehicles and the death of Mr. Walker [*Id*.].

At the time of the accident, Progressive had issued a Tennessee Auto Insurance policy to Ms. Davis under policy number 16788352 for the period of February 18, 2012 to August 18, 2012, insuring the 1995 Chevrolet Astro van ("the policy") [Doc. 39 at ¶ 49]. The Auto Insurance Coverage Summary was issued to Ms. Davis at 3732 Lilac Street, Knoxville, Tennessee, 37914 [*Id*. at ¶ 50].

**II.     Standard of Review**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact

5

exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a

finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III. Analysis

A federal court sitting in diversity applies the substantive law of the forum state. *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Tennessee applies the same rules of construction to the interpretation of insurance policies as other types of contracts. *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990). An insurance policy must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning. *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 768 (Tenn. 2006) (citing *Parker v. Provident Life & Acc. Ins. Co.*, 582 S.W.2d 380, 383 (Tenn. 1979)). Additionally, "insurance policies should be construed as a whole in a reasonable and logical manner." *Travelers Indem. Co. of Am. v. Moore & Assoc., Inc.*, 216 S.W.3d 302, 305-06 (Tenn. 2007) (quoting *Standard Fire Ins. Co. v. Chester-O'Donley & Assoc., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998)).

The Court will apply these rules of interpretation to Progressive's two arguments in support of its motion as to why it does not have an obligation to defend or indemnify Ms. Davis as the lessee of the 2012 Nissan Maxima.[2]

---

[2] In addition to the policy interpretation arguments discussed *infra*, Progressive has also argued that it has no duty to defend or indemnify Ms. Davis in the underlying tort action under the theories of joint venture, family purpose doctrine, and negligent entrustment [Doc. 38 at pp. 10-13]. The Court need not address these arguments as they are beyond the scope of the issues presented in the Amended Complaint [Doc. 17] in this case.

### A. Whether the Nissan Maxima Was a Covered Auto Under the Policy

Progressive first argues that the Nissan Maxima was not a "covered auto" as defined by the terms of the policy and therefore Progressive owes no duty to defend or indemnify for the May 12, 2012 accident. The policy obligates Progressive to "pay damages for bodily injury and property damage for which an insured person becomes legally responsible because of an accident." [Doc. 39-1 at p. 6]. The policy defines an "insured person" to include:

> (a) you or a relative with respect to an accident arising out of the ownership, maintenance, or use of an auto or trailer;
> (b) any person with respect to an accident arising out of that person's use of a covered auto with the permission of you or a relative; . . .

[*Id*. at p. 6]. The policy defines "covered auto" to include:

> (a) any auto or trailer shown on the declarations page for the coverages applicable to that auto or trailer;
> (b) any additional auto;
> (c) any replacement auto; . . .

[*Id*. at p. 5].

The policy defines "you" as "a person shown as a named insured on the declarations page" [*Id*. at p. 6] and Ms. Davis is the only person listed on the declarations page. It is undisputed that the 1995 Chevrolet Astro van is the only vehicle listed on the declarations page [*Id*. at p. 20] and therefore the Nissan Maxima is not a "covered auto" under the first definition. The Nissan Maxima is also not an "additional auto" which is defined by the policy as "an auto you become the owner of during the policy period that does not permanently replace an auto shown on the declarations page" [*Id*. at p. 5]. It is

8

undisputed that Ms. Davis was a lessee and not an owner of the Nissan Maxima; thus, the Nissan Maxima is not a "covered auto" under the second definition. Finally, a "replacement auto" is defined by the policy as "an auto that permanently replaces an auto shown on the declarations page" [*Id*. at p. 6]. Again, the Nissan Maxima was leased to Ms. Davis and did not permanently replace the Chevrolet Astro van. Accordingly, based on the undisputed facts and the plain language of the policy terms, the Nissan Maxima was not a "covered auto" under the policy.

### B. Whether Xavier Bingham or "Deon" Were Permissive Drivers Under the Policy

Progressive next argues that neither Xavier Bingham nor "Deon" were permissive drivers under the terms of the policy and therefore Progressive has no duty to defend or indemnify Ms. Davis for the accident. As noted above, the policy defines an "insured person" to include:

> (a) you or a relative with respect to an accident arising out of the ownership, maintenance, or use of an auto or trailer;
> (b) any person with respect to an accident arising out of that person's use of a covered auto with the permission of you or a relative; …

[*Id*. at p. 6]. Again, the policy defines "you" as "a person shown as a named insured on the declarations page" [*Id*. at p. 6] and Ms. Davis is the only person listed on the declarations page. Further, Ms. Davis did not own the Nissan Maxima, and was not maintaining or using it at the time of the accident. Although Mr. Bingham was Ms. Davis's son and therefore her "relative" as that term is commonly understood, the policy defines "relative" as "a person residing in the same household as you, and related to you

9

by blood, marriage, or adoption." [*Id.* at p. 6]. Because Mr. Bingham did not live and had never lived at the Lilac Street residence, he was not a "relative" under the policy. Therefore, the first definition of "insured person" does not apply.

Even assuming that the Nissan Maxima was a "covered auto," the second definition of "insured person" does not apply because Ms. Davis did not give permission to Mr. Bingham or "Deon" to drive the Nissan Maxima. When he asked for permission to borrow "the car", both Mr. Bingham and Ms. Davis assumed and understood that they were referring to the Chevrolet Impala that Ms. Davis occasionally borrowed. Mr. Bingham did not even know that Ms. Davis had driven the Nissan Maxima until after their conversation when he was so informed by another relative. Mr. Bingham admits that he took the Nissan Maxima without permission. Further, there is no evidence that Ms. Davis knew "Deon" was in the Nissan Maxima or that he had her permission to drive it. Accordingly, based on the undisputed facts and the plain language of the policy, neither Mr. Bingham nor "Deon" were permissive drivers under the policy. Therefore, no "insured person" as defined by the policy could be legally responsible for the damages of the May 12, 2012 accident.

## IV. Conclusion

For the reasons set forth herein, the Court finds that Progressive is entitled to declaratory judgment and owes no duty of defense or indemnity in regard to the motor vehicle accident of May 12, 2012 and the civil actions arising therefrom. Accordingly, Progressive's motion for summary judgment [Doc. 37] will be **GRANTED**. This case

10

will be **DISMISSED** and the Clerk of Court will be **DIRECTED** to close this case.  An appropriate order will be entered.

      ORDER ACCORDINGLY.

                                          s/ Thomas A. Varlan  
                                          CHIEF UNITED STATES DISTRICT JUDGE